PARSON W. STRAWBRIDGE, Respondent, v. STANDARD FIRE INSURANCE COMPANY, HARTFORD, CONN., Appellant.

Kansas City Court of Appeals, June 12, 1916.

1. INSURANCE, FIRE: Automobiles: Value of Property at Time of Fire. Plaintiff held a $1500 policy of fire insurance on an automobile providing that the insurer should not be liable beyond the actual cash value of the property at the time of the fire. During the life of the policy the machine burned. *Held* that Sec. 7030, R. S. 1909, forbidding the taking of a risk for greater than three-fourths of the property's value, and, when taken, the value shall not be questioned, relates only to the question of the value at the time of insurance and not at the time of the fire.

2. ——: ——: ——: Burden of Proof. Where insurance is on personal property of a changing character, liable to depreciation from use or injury, the burden is on plaintiff to show value of property at time of fire. Evidence examined and plaintiff *held* to have sustained that burden.

3. ——: ——: ——: ——: **Diminution in Value.** The policy being for $1500, this, by virtue of the statute conclusively fixed the value of the machine, at the time of the issuance of the policy, at $2000. The only diminution in value, which could be considered in determining the loss for which payment could be demanded, is the inherent depreciation in the machine itself through use, injury or damage accruing to it subsequent to the date of the policy. Reduction in value based solely on the fact that the car was a used or second-hand car is not the diminution in value here referred to. The value of an automobile or other property, in respect of insurance, means its actual value as an instrumentality for continued use, not the reduction in price, as compared with an unsold article, on account of its being "second-hand."

4. ——: ——: ——: **Penalty; Vexatious Refusal to Pay.** Inasmuch as the insurer was not required to pay more than the value of the car at the time of the fire, and had a right to investigate and litigate that question; and inasmuch as insurer had no opportunity to ascertain what that value was, the insured refusing to tell its value or to even discuss the question, and brought suit for the full amount of the policy less a small credit for the wreckage sold, there is no room for the charge of a vexatious refusal to pay.

Appeal from Jackson Circuit Court.—*Hon. Frank G. Johnson,* Judge.

AFFIRMED (*conditionally*).

*Fyke & Snider* for appellant.

*Ed E. Yates* for respondent.

TRIMBLE, J.—Plaintiff sued upon an insurance policy covering an automobile. The policy insured plaintiff against direct loss or damage by fire to an amount not exceeding $1500 upon one Auburn automobile, factory number 1428, gasoline, four cylinder touring car, model 1910. There was a provision in the policy that:

"This company shall not be liable beyond the actual cash value of the property at the time any loss

or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper reduction for depreciation, however, caused."

The policy was for one year from July 24, 1912. Shortly after midnight on July 10, 1913, lacking a few days of being a year after the policy was written, the machine burned while in use on the road in Dallas county. The petition alleged that the car was burned and destroyed by fire and was wholly lost to the plaintiff, save that the wreckage left from said fire was thereafter sold by plaintiff for the sum of fifty dollars, which was the reasonable value thereof."

The suit was for $1450 (being the full amount of the policy less the $50 received for the wreckage), with interest at six per cent from September 15, 1913, for an attorney's fee of $200 and for ten per cent of the loss as a penalty for vexatious refusal to pay. The jury returned a verdict for $1551.50 for the loss and assessed an attorney's fee at $150 but made no allowance for, and said nothing about, a penalty.. The defendant has appealed claiming that the court erred in matters respecting the determination of the question of the amount of plaintiff's loss, and also the allowance of the attorney's fee. With reference to the question of plaintiff's loss, it is claimed by defendant that plaintiff offered no evidence whatever upon the value of the automobile at the time of the fire, and that the court erroneously excluded defendant's evidence offered to show the depreciation in value of the automobile at the date of its destruction.

Section 7030, Revised Statutes 1909, provides that:

"No company shall take a risk or any property in this State at a ratio greater than three-fourths of the value of the property insured, and when taken, its value shall not be questioned in any proceedings."

193 App. 44.

It has been frequently held that this section goes no further than to conclusively establish the value of the automobile at the date of the policy. And, where the property insured is personalty of a changing character which is subject to diminution or depreciation, and the policy provides, as in this case, that the insurer shall not be liable beyond the actual cash value of the property at the time of the loss, the extent of the insured's demand and of the insurer's liability is, in the case of a total loss, the value of the property at the time of its destruction by fire, and this question of the value of the property at the time of the fire is open to dispute and litigation. [Burge Bros. v. Greenwich Ins. Company, 106 Mo. App. 244; Surface v. Northwestern Ins. Co., 157 Mo. App. 570; Non-royalty Shoe Co. v. Phoenix Assurance Assn., 178 S. W. 246.] And, in cases where the insurance is on personal property of a changing character or which is liable to depreciation from use, or injury, the burden is on the plaintiff to show the value of the property at the time of the fire. [Sharp v. Niagara Fire Ins. Company, 164 Mo. App. 475.]

But in this case, we think the plaintiff did furnish evidentiary facts from which the jury could find that the machine was worth at least all that the plaintiff was demanding. It is true plaintiff offered no evidence expressly stating, in dollars and cents, the value of the automobile at the date of the fire. He did say, however, that "the machine was *in fine condition* so far as I know at the time of the fire, the only repairs ever made on the machine was to tighten up the engine, which I did myself, and tires." Now, by virtue of the statute, section 7030 aforesaid, the value of the automobile, on July 24, 1912, the date of the policy, was fixed, not at $1500 the amount of the policy, *but at* $2000, since, under the statute, the $1500 was only three-fourths of the machine's value. With the value

of the machine on July 24, 1912, conclusively fixed at $2000, the only diminution on the value thereof, which could be considered in determining the loss for which payment can be demanded as insurance, is the inherent depreciation in the machine itself through use, injury, or damage, accruing to it *subsequent* to the date of the policy. And such diminution must be deducted, not from the $1500, but from the value of the machine, as fixed by the statute and the policy, namely, $2000. [Spickard v. Fire Association of Philadelphia, 164 Mo. App. 1, l. c. 4; Stevens v. Norwich etc. Ins. Co., 120 Mo. App. 88, 106-108.] The evidence was that the machine was not used but was put away during the months between December 1, 1912, and April 1, 1913, though used the rest of the time elapsing since the policy was issued. If now the machine was worth $2000 July 24, 1912, and was not used during the winter months and *in fine condition* on July 10, 1913, the date of the fire, this was a sufficient showing of facts from which the jury could infer that the machine, on the day it burned, was worth all that the plaintiff was demanding because they could say a machine run only in the summer months, and put away and housed during the winter months, and *in fine condition* needing no repairs except tires which it got, would not depreciate from use or damage, inherent in the machine, to the extent of $500 or more than that, which it would be necessary to find in order for the loss to fall below what plaintiff was demanding. In other words, even if the depreciation *subsequent to the date of the policy* amounted to twenty-five per cent, which would be $500, still this deducted from the $2000 would not reduce plaintiff's loss below the face of the policy, nor show it to have been less than the amount he was demanding. According to the evidence of defendant, the depreciation subsequent to the policy was this precise amount, namely, twenty-five per cent. So that, according to

defendant's evidence, the loss did not fall below the amount demanded.

As to the evidence which defendant claims was erroneously excluded, the record shows that plaintiff's counsel expressly stated that he had no objection to the defendant showing the depreciation, if any, on the insured machine from the date of the policy up to the time of the fire. And the court permitted defendant to show what was the depreciation subsequent to the issuance of the policy. Many of the questions asked by defendant, which the court excluded, were questions which, in reality, attacked the value of the car at the date of the policy. To have allowed them to be answered would have violated section 7030 which says the value at that date shall not be questioned. The other questions excluded did not attempt to show the actual depreciation in the machine itself from inherent deterioration through lapse of time, use, injury, or damage thereto, but were based upon the theory of depreciation merely because it was at the time of the fire, a *used* car. Of course, at the time of the fire, the automobile could not have been sold for as much on the market as a new car of the same make and model, for, compared with the latter, the automobile in question would then be what is commonly called a "second-hand" car. But, as between parties hereto, the value of the car, in respect of insurance, means its actual value as an instrumentality for continued use. If, through no depreciation inherent in the car itself by reason of the lapse of time, use, injury or damage, the car, as an instrumentality for continued use by the plaintiff, is worth as much or more than the amount claimed, the defendant cannot complain. He cannot add to that actual inherent depreciation the decrease in the price it would bring simply because it is not a new, but is now a used or second-hand car. One might buy a set of furniture, and, after using it in the house

for one day without a particle of injury or damage thereto in any way, would be unable to sell it for anything like the price it would command if it had never left the store, and yet the furniture, as subject of insurance between the owner and the insurance company, would be as valuable as ever. Because the insurance company insures it as used property intended for further use by the insured. We are, therefore, of the opinion that the court did not err in the exclusion of evidence.

We come now to the question of the allowance of an attorney's fee. Section 7068 Revised Statutes 1909, provides that "if it shall appear from the evidence that the company has vexatiously refused to pay, the jury may allow a penalty not exceeding ten per cent of the loss *and* a reasonable attorney's fee." The jury did not allow the penalty, but did allow $150 for attorney's fee. The statute seems to join the two, penalty and fee, and appears to make the fee subsequent to, if not dependent upon, the allowance of the penalty. We do not hold that if the jury finds there has been a vexatious refusal to pay, it cannot award the fee where it has withheld the penalty, though it does seem that if the jury thought there was a vexatious refusal they would have allowed all that the statute authorized them to give. The verdict says nothing about whether the jury found a vexatious refusal or not. It merely assesses the damages on account of the loss and further assessed "the plaintiff's damages as and for a reasonable attorney' fee in this suit in the sum of $150." There is room for the suspicion that the jury did not think there had been vexatious refusal, but concluded that plaintiff notwithstanding that fact, was entitled *as additional damages,* to an attorney fee because he had incurred that expense in bringing the suit. However, we need not decide the point here discussed, since as we view the record, the objection to the allowance of an attorney's fee can be placed upon another ground.

As said before, the company had a right to question the value of the car at the time of the fire. The condition of the car and its value at that time was a matter within the knowledge of the plaintiff and not of the defendant. The extent of the depreciation inherent in the car itself was a matter vitally affecting defendant's rights. It, therefore, had a right to inquire of plaintiff as to the extent of that depreciation and to learn from him the exact condition of the car. But, on this matter plaintiff testified as follows:

"I made out a proof of loss, which was furnished to the company. Afterwards Mr. Keller, an adjuster, and I think on the 10th or the 11th came to my office, commenced to figure with me about the depreciation and I said, 'Well Mr. Keller I have a policy which calls for $1500 insurance and I paid the premium for that amount of insurance and your company issued the policy and *you can't talk depreciation to me.'*"

On cross-examination he said:

"In the conversation with Mr. Keller I stated I would not take into consideration any depreciation on account of wear and tear on the car, and insisted upon the payment of the full amount of the policy, and I have been insisting upon that all the time.

"Q. You insisted upon the payment of the full amount of the policy, didn't you? A. Yes, sir.

"Q. And you absolutely refused to talk about a settlement upon any other basis? A. No, sir.

"Q. You mean that you would not consider terms of settlement upon any other basis, but you insisted upon the payment of the full amount. A. I did."

It thus appears that no opportunity was given the company to adjust the question of even the depreciation of the car that could properly be considered, nor does it appear that the depreciation then sought to be adjusted before suit was brought was anything other

than such as was proper to be considered. The company had a right to ascertain, before it paid, what was the condition of the car, and how much it had depreciated since the policy was issued. As the plaintiff would not allow the defendant to even talk depreciation to him, we do not think the defendant could be said to have vexatiously refused to pay. For plaintiff was the one person best qualified to know what that depreciation was, and defendant had a right to obtain its information from the one in the best position to know, and there is no evidence that defendant was able to get it anywhere else. Indeed, it appears that it was unable to do so, since its witnesses as to depreciation were not able to speak of this particular car because they knew nothing of it, but only testified, as experts, as to what the depreciation from use could ordinarily be expected to be in that length of time with good care and handling. So far as the record shows, the defendant could not ascertain, without litigation, what was the true condition and value of the car at the time of the fire. In addition to this, from plaintiff's own evidence it appears that he had "a policy which calls for $1500 insurance;" in other words, he was demanding that sum; he "insisted upon payment of the full amount of the policy;" and yet, when suit was brought, the sum demanded and the amount recovered was reduced by the amount of the salvage. It may be this $50 was credited on the policy at the time of the demand. If so, possibly this latter consideration would have no bering upon the question of vexatious refusal to pay. But the record nowhere shows this to be the fact, and, on the contrary, plaintiff says he "insisted on the payment of the full amount of the policy," which was $1500. We are of the opinion that, under all these circumstances, the allowance of $150 attorney fee was improper.

If, therefore, the plaintiff will, within ten days from the announcement of this opinion, file a remittitur of that part of the judgment which includes the attorney fee, the rest of the judgment will be affirmed, otherwise the cause will be reversed and remanded. It is so ordered. All concur.